Mr. Getsch, on behalf of the appellant, are you prepared to proceed? Yes. All right, then you may proceed. Good morning, Your Honors. My name is Gary Getsch, and I represent Hezekiah Whitfield, the appellant in this case. Mr. Whitfield is serving a life sentence after the jury convicted him of the first-degree murder of a man named Fred Reckling back in 1994. The age of this case seems unusual. It's because another man confessed to the murder in the mid-1990s. That man, James Edwards, confessed to a number of crimes at the same time that he confessed to this murder. Confessions actually play a large role in this appeal because this alleged confession from Mr. Whitfield was admitted at trial. On the issue of Mr. Whitfield's alleged confession, an officer, Spar Garn, of the Chicago police, contended that Mr. Whitfield confessed to her when he was in custody on another matter. Spar Garn was required by law to electronically record that confession, but she did not. So it's presumptively indismissible under the statute, correct? Correct. That's the presumption going in. It's not indiscipline. Right. Under Section 103-2.1 of the Code of Criminal Procedure, unless it's electronically recorded in some fashion, it's presumptively inadmissible. And there are exceptions to that under Voluntary Institutional Ability? The State at trial relied on the Subsection F exception, which states that if by a precommence of the evidence, the confession is found to be both voluntary and reliable, then you can get over this presumption of inadmissibility. I would suggest you hone in on that and assume that, I mean, it wasn't recorded. As I read the facts, the State argues, well, the police say there wasn't recording equipment immediately available, but we find out later it's in the station. So address whether or not, address the reliability and voluntary factors, and whether the trial court handled it correctly. Well, I believe the trial court did not. The trial court is relying entirely on Spar Garn's own testimony. Spar Garn admits that she didn't think she had to record it because she wasn't a detective. And so we're relying on the testimony of someone who didn't even know that she was supposed to report this. Spar Garn's testimony at the pretrial hearing is actually different from her testimony at trial as to what the actual statement was. You know, it's a word here or there, but in a statement like this, a word here or there can make all the difference. Are you contesting that the statement was voluntarily given, first of all? Right. I don't think that voluntariness is an issue here because it's a short interaction. Mr. Whitfield admits to interacting with Spar Garn. So it's not involuntary in the classic sense that he was pressured into doing it. Correct. So what about reliability? But reliability is where we run into a lot of issues. There's two other officers within feet of this alleged interaction or this interaction, this alleged confession. Neither of the other officers heard either Miranda warnings or the alleged confession. And one of the other officers testified that he heard Whitfield say, my last interaction with police had something to do with DNA, and my defense attorney told me not to talk about it. And so that runs directly counter to what Spar Garn testified to in that Mr. Whitfield apparently confessed to a decades-old murder and then confessed to fleeing. Another factor that I find sort of goes against reliability is that the police then did nothing with this information for over a month. They let him go the next day. So here we have somebody confessing to a murder and then confessing to fleeing and then being let go by the police. And we know for a fact from Edward's case that a confession to the crime is enough to obtain a conviction. Did Spar Garn or anyone else contact Waukegan Police Department shortly after this statement or no? I believe Spar Garn said that she tried to. It's not clear from the record. All that's clear from the record is it was at least a month until Mr. Whitfield was actually arrested on this charge. So isn't that kind of evidence, or if you're looking at the totality as the statute requires us to do, isn't that somewhat evidence that Spar Garn was really not taking down a statement but so much as following up on a warrant that she was aware of that was out there? So she's talking to him to determine, you know, should we take this guy in on this warrant or what's this warrant all about, basically? And she talks to him, doesn't take it down because, again, this isn't her case. She's just trying to find out what's going on with this warrant, and then they let him go. So isn't that evidence or basically that this really wasn'tóshe really wasn't taking the confession from this guy? Well, the problem is Spar Garn herself says she went up there to question him about the murder. The warrant had nothing to do with the murder case. The warrant had to do with a prior domestic battery that had occurred like a week earlier. And so I don't think there was any question as to whether he could be arrested for this warrant. But she got the information from the girlfriend, right, who was the victim of the domestic? No. There was another girlfriend? There was anotheró That's right, you're right. Third party. The girlfriend that was there at the time was the one who actually hit him with the pipe. Right. And so it was clear she was trying to stir up trouble, getting Mr. Woodfield in trouble. So she was encouraging Spar Garn to pursue this murder charge. Spar Garn looks into it. There's nothing in the system concerning the murder. Right. And so she purposefully approaches Mr. Woodfield. So you're saying her focus was to question him about this alleged murder. It was not simply to obtain some general information. Right. I mean, the other officer was entering the general information about the charge that Woodfield was in there for. Spar Garn purposely approaches him because of what the girlfriend was feeding her. So I think it's pretty clear her intent was to question about the murder. But if it were her intent to question about the murder, why didn't she take him into custody? Well, he was in custody on the warrant. But why didn't she take him into custody and charge him with the murder? That's what I'm saying. The idea that he confessed to her is sort of surreal in that she didn't follow through. She's alleged that she obtained a confession to the murder. I mean, that's by her own words, that he said, I did it. And then I fled out to Indonesia. And she's like, well, I'm not a detective. I better go to the detectives. First of all, she probably should have went to the detectives from the beginning. If she's going to question a suspect in a murder case, and she doesn't feel that she's qualified, and she obviously doesn't know that the law requires her to record such interactions, you know, she probably should have taken steps. But the question that she raises is a good one. Because in other cases, if police simply arrest somebody on a warrant and get into a conversation about matters in general without focusing on a murder charge, the statute may not apply. But in this case, I think you're right. The focus was on the murder investigation. Under the case law, reliability and voluntariness are separate elements. Correct. Obviously, you're alleging the trial judge erred in its analysis of carving out an exception to the statutory requirement. So where specifically and succinctly did the trial court go wrong on the voluntariness and reliability analysis? The reliability analysis. Yeah. Where did it go off the track on? The statements, as recalled by Spargan, are frankly unbelievable given the totality of the circumstances. She has obtained a confession. Nobody else heard it, even though they were within feet. None of the other officers can corroborate the reliability of this confession. She admits that she purposely did not record it because she didn't think she had to. So there's all these factors that go to – we're not saying there wasn't an interaction, but we need to know the reliability of the interaction, and there's nothing to corroborate her testimony. Did the trial court specifically address the reliability, specifically or just sort of combine the two? He doesn't mention, no. It's just – I find that she was credible and therefore – and that he was merendized and therefore I find that the statement was voluntary and reliable. He doesn't break it down into, you know, this factor suggests that the statement as testified to by Spargan actually occurred. You know, if we were to accede to the correctness of your argument, there's an overarching issue here, and I think this case may turn on whether or not these alleged errors were harmless beyond a reasonable doubt. Because if they are, I think you'd have to agree that even though there were some evidentiary rulings that were erroneous, that would trump those rulings. So tell us why these rulings are not harmless beyond a reasonable doubt. Well, if you look at the number of errors – So we have an alleged confession by the defendant who we can't verify at all, and it's actually testified to in two different ways. So that's substantial evidence. I mean, the jury asked specifically to look at Spargan's report, likely because they were wondering how did the statement actually occur. Well, I think it would be disingenuous to find that the statement was not considered by the jury. It was referred to in closing arguments. A question was asked. So I think we're past that. You've got DNA evidence, substantial, very strong, compelling DNA evidence, that the State in turn is going to argue would trump these errors. So why wouldn't that very compelling DNA evidence establish harmless error beyond a reasonable doubt? Well, the State relied on all this other evidence as well. I mean, DNA is not infallible. We have the DNA expert that testified was not allowed to say there was a match to the DNA at the store, just based on their own protocols. You know, the statistics suggest, yes, that it was Mr. Woodfield, but they weren't allowed to say match where they were for the car. So the DNA isn't as slammed up as the car. Well, the car was the alleged victim's car, correct? Right. But then it had been abandoned in Chicago for up to a week before being found. So the real perpetrator just stumbled on the victim's car? What are you suggesting? Well, that Mr. Woodfield could have after the crime. But isn't that the purview of the jury to determine the credibility of that evidence? I mean, there was a match in the car. They could not exclude the defendant in Bar-Keegan at the Reckling's appliance store. So isn't that a presumption or a reasonable inference for the jury to make? And what is a standard of review for us with respect to that evidence? Well, I think that touches on the second issue, is that the defense wasn't allowed to present their full defense. They weren't allowed to present Edwards' prior convictions? No. They weren't allowed to present the same evidence that the state used in Edwards' previous trial to support the state's conviction at this trial was that Edwards' confession was unreliable, which was the defense's contention at Edwards' trial. So at Edwards' trial, the state was allowed to introduce other statements by Edwards and other crimes that he committed to corroborate the reliability of his confession of this crime. This jury didn't get that information. So they didn't have the information that suggested Edwards was credible when he confessed. And so the state of … What was the court's ruling and the basis for not allowing that in? The court said other crime evidence shouldn't be allowed in. The defense jury probably should have pointed to this court's opinion in Edwards and said, hey, it's already been found to be reliable and admissible. The defense jury didn't do that. So the judge, I don't know that the judge was absolutely aware that a ruling on the reliability and admissibility had already been made by an appellate court. But the jury heard that Mr. Edwards made a statement confessing to this crime. Right. But they did not hear all the other evidence that the state was allowed to use at Edwards' trial to bolster that confession because the state at this trial went on extensively to try to discredit Edwards' confession. So if we were to find that the court erred in its ruling in not allowing that evidence, we're still going to come back inevitably and inexorably to the harmless error analysis. So is the state's case totally standard fall on the DNA evidence? What about the girlfriend, Mathis, testifying to a more detailed confession by the defendant? Well, Mathis' testimony is tainted by the fact that she clearly researched the Edwards case numerous times on the Internet prior to her interactions with Spargar and, I mean, obviously by trial she was well aware of all those facts. And the jury knew that? The jury researched it. The jury knew that she had some issues, that she was biased, that she had researched this. They knew all of that. Right. They had all of that. That's why I think they focused more on Spargar's. They wanted Spargar's report because they obviously felt Spargar was a more credible witness than this girlfriend who had a beef with him, who hit him with a pipe. She had obvious reasons to be untrustworthy. I know I've set my time. No, keep going. Finish your thought. Further thought on this subject. Yes, Your Honor. So getting to Justice Shostak's point is that the jury was able to consider this evidence that was presented, but there was a lot of evidence the defense wanted to get in that the jury wasn't allowed to. And so I think that goes to the harmless error analysis, is that the full defense case wasn't presented in this case. And so to say that these errors were harmless when we don't know how the jury would have reacted. Touch real briefly, if you don't mind, on Amati's testimony. Return of the call. Well, the court kept it out on hearsay grounds. I think quite clearly it's not hearsay. It goes to state of the mind, and it goes to show that he had been planning a trip. Honestly, if you think about it logically, it's pretty hard to flee to Indonesia when there are steps you have to take, including getting a passport or visa, some permission to visit a foreign country. So I think that's what Amati's testimony was going to establish, was that up to six months prior to his trip to Indonesia, Mr. Whitfield had been inquiring about this fiancée that he had there and had been planning to visit. Well, I think you can summarize it by saying the attorney wasn't testifying as to what somebody told him. He was testifying as to what steps or actions he took, which arguably is not hearsay. Correct. Anything further? I did have one further question about the other crimes evidence. Are you relying on Chambers for that? I'm relying on this court's opinion in Edwards that says that other crimes evidence should have been or was properly allowed in the state's case, so it should have been allowed in the defense case in this case. This court already decided that that was properly allowed in a prosecution against a defendant. The standard for use for a third party is even, because we're not worried about prejudice to the defendant in this case. So the fact that this court already held that evidence was properly admitted in the prosecution. But it didn't hold that it was properly admitted in the prosecution of a different defendant. Well, no, but that's the standard for admissibility for a different defendant is actually less if you look at the Cruz case that is cited. It talks about how prejudice to the defendant is no longer a concern. So when you're introducing other crimes evidence against a defendant, you have to balance probative versus prejudice. When it's against a third party, such as in Whitfield's case, you're not worried about prejudice. It's all about whether it's probative. Well, or, yeah, the relevance of it. Right. And, I mean, this court has already decided it was relevant to, for the exact purpose that. To Edwards. No. Not necessarily relevant to Whitfield. Relevant to show that Edwards' confession was reliable, which was the exact contention that the defense was making in this case. Not necessarily relevant to Edwards as a person, relevant to whether his confession was reliable. Yeah, but aren't you then trying to bootstrap Edwards' confession, which was taken before the police had the evidence that they had against Whitfield? So you're saying, okay, if anybody confesses to a murder and then somebody, the new evidence is brought up to show that it was not that person, that person was wrongfully convicted, then their statement and the acceptance by the trial court, by a reviewing court, should always come in to show, wait a minute, somebody's already confessed to this, and this trial court or this higher court has sanctioned, not sanctioned, has approved this confession. I mean, then that would just do, that would just say, okay, from here on out, if you get some evidence that somebody else committed the crime other than the defendant who's sitting in jail, let it go because this guy's already confessed. No, that's not what I'm saying at all. I'm saying the jury should be allowed to make that determination in the same way that the jury was allowed in the previous trial. But the jury heard that Edwards made the statement and then made the confession and that Edwards was convicted. No, they didn't hear he was convicted. That was not allowed. There was no statement at all in this trial that James Edwards was ever convicted of this. No, I think in this trial there was a reasonable inference that somebody else had been found guilty of this particular offense. I disagree. The trial court's ruling specifically stated don't touch on the fact that he was convicted. Nobody's allowed to get to that fact. The only thing that was allowed was his confession, and then the state. Which was made how many years before? Right, shortly after the crime, a year after the crime. Correct. And they knew what the confession was. They heard the confession. Right. The state then challenged the reliability of the confession in the same way that the defense did back in the early 90s. I understand. And so this other kind of evidence really just goes to bolster the reliability of the confession in the same way that it did earlier. My point to you is did we need to bolster the credibility of Edwards' confession? Did you need to do that? Absolutely, because the state was allowed to say this was unreliable because he was in custody for X number of hours. You know, all these reasons. Those were the same reasons the defense did at Edwards' trial. And the jury did not hear that Edwards was actually convicted of this crime. I must forget your time has expired on direct. We'll have an opportunity to address the court again in rebuttal. Ms. Campbell, on behalf of the appellee, you may proceed. Good morning, Your Honors. Good morning. I'm going to interrupt you and ask you to start off with one issue that is kind of questionable to me, and that's Ahmadi's testimony. How was that hearsay? The trial court, there was an offer of proof as to what he would say. And the defense counsel said that he wasn't trying to get in hearsay. He was trying to get in, I think, maybe that he had filed something. More like a sequence of events, correct? More like a sequence of events as opposed to exactly what was said. I'm not sure exactly what he was trying to state that he wasn't trying to get hearsay statements or confidential, quiet interactions. He wasn't. He was testifying as to facts personally known to him, not what somebody said to him. How can that be hearsay? I think perhaps it's the way that defense counsel was making his offer of proof. He didn't do anything like offer if he had filed, you know, some sort of petition to get her admitted. Didn't offer any sort of document like that that would show the sequence of events. And quite frankly, it was a longstanding immigration issue. I think he said, you know, the first meeting was quite a period of time. Before, you know, meeting afterwards. Let me ask you a very pointy question, not to put you in a hot seat, but are you standing there saying these statements are hearsay? Have you argued that? I'm relying on the record. But on appeal, are you arguing that those are hearsay? Some of what Ahmadi could have said would be hearsay. Could have said. He was asked, he wanted to testify when the defendant first contacted him. When the defendant's first office visit was in a broad description of the work that he was doing for the defendant. So he could say the defendant called me or contacted me on this date. I was doing this kind of, he visited my office two weeks later and I was doing immigration work. How was that hearsay? And that's what the court ruled. Was that, was that, was that really in and out? I'm trying to remember the exact wording of the hearing and your honors are going to have to rely on the record for that. My recollection is that he had said that it was doing, in some reference, with the timing of the things. But even that would not have truly aided the defendant. Okay, so it could have been error, but it was harmless error. Yes. Okay, good. We're making progress on this. Quite frankly, it was a longstanding immigration problem. So it is the timing of the defendant's actions. He didn't choose to go to pursue this problem until just after the DNA swap that the police took. So again, that's indication of flight. What about the overarching issues, and that's the presumptive unreliability of the statement and the harmless error? Can I add one quick thing to that? Sure, go ahead. As far as that information, it did go in in another sense because the girlfriend, Mathis, much of her statement was in regards to the defendant's relationship and the fact that he had gotten married in Indonesia when he was there. So that evidence was before the jury in that matter. Go back to it. So let's start out with whether or not the court erred in its ruling that the presumptive unreliability was overcome by the reliability and voluntariness of the statement. Okay. For the reliability, I addressed some of those factors at my brief. Well, this is presumptively unreliable in the first place because the statute wasn't technically followed to the letter, obviously, right? Right, obviously. It was not recorded. Correct. And you have the burden of establishing, do you not, that it was voluntarily given in a reliable and exception to the statute? Correct. So tell us how you did that. By a preponderance of the evidence. Well, first of all, the very existence of subsection S.F. indicates that the court has seen that some of these statements could and should be used. And again, it's voluntarily reliable, so we're going to focus on the reliability. And first of all, the best indication of reliability is the trial court's credibility findings. And I note those on page 8 of my brief. He found Spargarian to be extremely clear and credible. That's at page 285. And that the defendant's recollection of events to be slanted to his particular point of view and to what he perceives to be in his best interest. And that's at page 284. So those are some of the factors of reliability. Some of the other factors are very similar to the voluntary ones. I believe the defendant noted them in his brief. And I address it on page 9 of my brief. Factors of time, contents, and circumstances. The judge in particular noted the short duration. And Justice Shostak noted that, I believe it was Justice Shostak, noted that Spargarian wasn't in fact trying to get a formal confession. She was doing a computer check. She had spoken to Mathis. Mathis had said the defendant was wanted in a murder investigation in Wauhegan. But somebody else was serving time for that offense. She had also mentioned, I think, the prior domestic battery. Spargarian went on the computer. And they found out about the defendant's prior domestic battery incident. That's, in fact, why he was taken from the hospital to the police station. What exactly are you saying? Are you making the argument so many words that the statute really didn't apply, because he was not being interrogated on a custodial interrogation? No, I'm not arguing that it wasn't. What are you arguing? He was, in fact, it's part of a statement of voluntary and reliability. And many of the factors for both of those are similar, so there's overlap. So you're not saying that one of the exceptions under that CE applies, which the exceptions to the statute under E-103 that says there are exceptions, so there's no presumption arises with respect to the- In the trial court, they focus on subsection F. So that is one. Which one, the totality? Yeah, and then I mentioned, is it the- Yes, subsection E- So it sounds to me like you're talking about exceptions. What exception applied in this case? Both subsection F, which is that it was voluntarily and reliable, and I also argue that subsection E in my brief, that was not addressed at trial or in the trial court. And basically, subsection E is that it's not practical or the equipment's not available. Is that really the case here? For Spare Garen, it was. She was trying to do a computer check on warrants. She was not trying to get any sort of formal statement. She had had dubious statements by the victim with a grudge against the defendant. She had checked the computer. She found the prior domestic battery was in the computer. She didn't find anything about the defendant having any sort of warrant or anything about a murder. But she did question him about the murder, correct? She did go, and- What would be the purpose of a statute if the officer could come in and just say, Well, you know, I'm just asking general questions, and I happen to touch on the murder and, you know, so what's the equipment's in the police station, but it's not immediately set up in front of me. Would that be the legislative purpose of the section? The legislative purpose of the section is to prevent the police getting on tape statements in the coercive atmosphere of the police station. This was not that sort of situation. So not a coercive atmosphere? Not between the two of them, and there's more indications of that on- Let's see. It's sort of a friendly general discussion about this, right? It is. I mean, the purpose of the statute is they don't want the police going in, getting a coercive statement from the defendant in an interview room and then coming back later and saying, Okay, now that we've got it all nailed down, we're going to tape you. That's the general trend of the cases that we cite in our brief, is where the police purposefully don't tape like the first run. This was not any attempt by the detectives or officers, Spare Garin, to elicit a confession. She doesn't ask the defendant if he did the murder. She's asking him if he's wanting in regards to a murder investigation. So he could be a witness as far as- You're making a very plausible argument conceitedly, but if we were not to agree with your argument about the statements, the presumption being overcome, where is it going to leave you in terms of the conviction? That would leave me with disappointment to my homeless error argument, which you all have touched on. And that is the DNA evidence is really the core of this case. Well, how do you respond to your opponent's statement that the DNA, of course, in the car was the defendant's, but the DNA at the grand appliance could not exclude the defendant, but it could not positively identify the defendant? This goes actually to the credibility of the DNA expert, because he's very careful in what he testifies. He says that the DNA in the victim's car, which is on, I believe, the driver's seat and the threshold of the car, is a match. And that's within a sextillion percentage point. And then he says in regards to the defendant's DNA at the store, it is not Edwards, it is not Reckling, who is the victim. It cannot preclude the defendant, but that preclusion is still within a trillion percentage. So, in fact, it is, in fact, I believe Justice Hudson used the word compelling DNA evidence. And that is what is the true core of this case, is the compelling DNA evidence. And the defendant lived where? Anywhere near Waukegan? He did not live near the location where the abandoned auto was. That's my recollection, but I could not cite any page number or anything. Did the defense argue he could have been a customer? Was there any argument presented at trial along those lines that there's an actual explanation as to how his DNA could have gotten into the store? They never presented any sort of presumption. It was, I think, what they were hoping that the jury would infer, is that perhaps he had been a customer. But it seems oddly unfortunate for the defendant that his DNA could not be precluded from the store and that it also appeared in the victim's car. But didn't Reckling's son testify that he was never a customer? And I think somebody else from the store testified that he was not a customer. I will defer to your remembrance of the record. If I was defense counsel, I would say, you know, they won't remember everybody. But, you know, certainly that's, it would be a coincidence beyond the realms of credibility that he both happened to be a customer and bled at the store, you know, conveniently to be picked up. And he also somehow bled in the victim's car when there is testimony that he did not know the victim and provides no even reasonable or unreasonable inference on how his blood got into the victim's car. And what's your position on the exclusion of other evidence? That was the final issue that got raised on appeal. Other than some other offenses on Edwards. For Edwards? Right. I believe it is in the Cruz case where they talk about not having a mini trial in regards to other crimes evidence. Certainly in this case, the trial judge did make a considered, reasoned decision, and I believe that is at page 1050. He says he is admitting the defendant's, or Edwards' confession, and he is not admitting the other crimes evidence because it's separate and distinct are, I think, the phrases he uses. So he has made a thoughtful consideration and made a decision that I do not think could in any way be considered an abuse of discretion, which is the standard that you would apply for this. I think it can be distinguished from Cruz because in Cruz, in the retrial, Lionel Wayne's statements were admitted, and then, or sorry, Dugan's statement was admitted, and then the defense sought to admit other crimes by Dugan. But in that case, in the retrial, the state was linking Cruz and Dugan and saying they committed the crime jointly. So it was, in fact, part of the defense counsel's strategy to then show that Dugan always acted solo, and he would not have colluded with Cruz to, in fact, commit the numerical crimes. So in fact ‑‑ Distinguishable from this. Exactly. All right. Your time has expired. Thank you very much. And Mr. Getch, you may rest. I just wanted to touch a little bit on the purpose of the statute creating the presumption of inadmissibility. The state always talks about voluntariness, which, you know, they're discussing coercive atmosphere, but the statute itself gives reliability a separate factor, and I think we need to know that these statements are accurate. And that's one of the main reasons to record these things. So if Spargana's testimony alone is enough where the circumstances, again, are sort of unbelievable, none of the other police heard this confession, they let him go the next day, that her testimony and that she didn't think that she had to record it, if that's enough to overcome this presumption of inadmissibility, then the presumption is sort of meaningless, really. All you need to do is call the police officer who took the statement and say, yeah, you know, we had this interaction, and he told me he committed a murder. That's enough to overcome the presumption of inadmissibility. The presumption is meaningless. With respect to the exclusion of other evidence with respect to Mr. Edwards, I mean, once you start piling on all of these prior burglaries or questions concerning his prior confession, aren't you just going to show Edwards' propensity to commit crimes? I mean, does it really get to the credibility of the statement, or are you just trying to dirty up Mr. Edwards to show that most likely he had the propensity to commit crimes and he's probably the one who committed this murder? This Court has said all of that, the evidence that was used at Edwards' trial was allowed not to show propensity. It was to corroborate the reliability of his confession. So there are circumstances where certainly other kinds of evidence might meet that standard and that it's just dirtying up some other dude. But in this case, it's already been held that this evidence of other crimes was admissible for the exact purpose that the defense wanted to use it for, which was to show that Edwards' confession to this murder was reliable. And so the other crimes were what? Armed robberies that he had committed. There were also murder confessions that weren't allowed in at the original trial. But the defense here was trying to use the exact same information that the state used to convict Edwards. I understand that. But armed robberies with a gun, with a table leg like he said that he used in this instance, or what? The facts of that aren't clear. All that is clear is that this court said that those other armed robbery confessions and the facts of those armed robberies were allowed to show that this confession was also reliable. And in this instance, wouldn't it be more reliable if you could say one of those other robberies was an instance where he hit the guy with the victim with the table leg like he did here? Was that the case? It's not clear from there what the details of the other armed robberies. What is clear is that the details of the confession must have matched those armed robberies because this court said the fact that those confessions were reliable suggests that this confession to this murder was reliable. But in this case, we don't know because the defense didn't allow to present it. Was there offer of proof concerning that? No. And so with that, are there any other questions? I have none. All right. Thank you very much. Thank you so much. I'd like to thank both counsel for the quality of the arguments here this morning. The matter will be taken under advisement and the court will issue a written decision in due course. We're going to spend a brief recess to prepare for the next argument. Thank you.